# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **SHERRY BOOKER,** | ) | |
| | ) | **No. 3:17-cv-01394** |
| **Plaintiff** | ) | **Chief Judge Richardson** |
| **v.** | ) | |
| | ) | **MEMORANDUM OF LAW** |
| **CHEADLE LAW,** | ) | |
| | ) | |
| **Defendant.** | ) | |

The Defendant has renewed its Motion for Summary Judgment. This Memorandum supports that Motion.

## INTRODUCTION

The Plaintiff borrowed money from a lender known as Harpeth Financial Services, LLC d/b/a *Advance Financial 24/7* ("the Lender"). Plaintiff later defaulted on her loan to the Lender. The Lender then hired the Defendant (a law firm) to help the Lender collect the loan. Defendant sent a demand letter to Plaintiff dated June 12, 2017 and, thereafter, a lawsuit was filed against her. A Judgment was then entered against the Plaintiff. She then sued the law firm that represented her Lender. In this case, Plaintiff contends that the Defendant's earlier letter, *i.e.,* the one dated June 12, 2017, violated the Fair Debt Collection Practices Act ["the Act"] because it allegedly contained "*misrepresentations,*" which "*misled her.*" She identifies two (2) misrepresentations.

Plaintiff makes no other claims. [1]

---

[1] Plaintiff filed this action with the assistance of an out-of-state law firm. The Complaint contains several paragraphs that are demonstrably unrelated to the facts set out in other paragraphs, and which indicate Plaintiff's counsel used a cut-and-paste form from some other case.

Case 3:17-cv-01394   Document 60   Filed 12/14/18   Page 1 of 18 PageID #: 717

## DEFENDANT'S INITIAL MOTION FOR SUMMARY JUDGMENT

In connection with Defendant's *initial* Motion for Summary Judgment, it submitted ten (10) Statements of Uncontested Facts. Plaintiff admitted 9 of those 10 **[Doc. 21-2]**. However, this Court determined that Defendant's Motion was premature, given that discovery was not yet completed. **[Doc. 34]**.

Defendant then renewed that Motion for Summary Judgment. That Motion, however, was further delayed as a result of a discovery dispute. However, that dispute was resolved by the Court, partially in the Plaintiff's favor and partially in the Defendant's favor. **[Doc. 53]**[2]

At this juncture, all written discovery has been exchanged and the parties have been deposed. Additionally, the deadline for Plaintiff to designate an expert has come and gone, without any designation. Accordingly, the Defendant revisits the possible disposition of Plaintiff's claims under Rule 56, F.R.C.P.

## THE SIGNIFICANCE OF DEFENDANT'S
## STATEMENTS OF UNCONTESTED FACTS

As noted, the Plaintiff admitted nine (9) of the ten (10) Statements of Uncontested Facts associated with Defendant's *initial* Motion for Summary Judgment **[Doc. 21-2]**. When the Defendant renewed that Motion for Summary Judgment, it submitted those same 10 Statements of Uncontested Facts plus additional facts obtained via admissions made by Plaintiff during her deposition **[Doc. 39]**. The second time around, however, Plaintiff neither admitted nor denied a great number of the statements. Instead, she lodged an "objection," contending that the facts were not relevant. However, and as will be noted later in this Brief, issues of relevance are to be decided by the Court. Moreover, Rule 56, F.R.C.P., expressly provides that in oppositions to

---

[2] The Court declined to require the Defendant to produce all of the records that Plaintiff asked for and declined to grant Plaintiff any award for attorneys' fees **[Doc. 53]**.

factual assertions, a non-movant must address the facts, head-on. Otherwise, the Court may "*consider the fact undisputed for purposes of the motion.*" Local Rule 56.01 provides an even harsher burden. It provides that a party opposing a Motion for Summary Judgment "*must respond*" to each fact set forth by the moving party. And, if a fact is disputed, it must be supported "*by specific citation to the record.*" *See,* Local Rule 56.01. Accordingly, the Plaintiff must be held to her initial admissions and deemed to have also admitted the additional facts, since she did not expressly dispute them, or respond with a "*specific citation to the record.*" These admissions are significant in this case, as will be highlighted below. All of the facts set out below are outlined in Defendant's *revised* Statement of Uncontested Facts **[Docs. 21-2 and 46-1]**.

## THE FACTS

### I. <u>Plaintiff's History of Borrowing</u>

This case concerns a loan procured by Plaintiff on June 29, 2015. <u>Prior</u> to procuring that loan, Plaintiff procured loans from various other lenders including World Finance, Springleaf Financial and Old Hickory Credit Union. Thus, she is not a novice borrower. She is also an educated borrower.

### II. <u>Plaintiff is an Educated and Experienced Borrower</u>

The Plaintiff graduated from Maplewood High School in 1981 and thereafter she obtained her **Certification for Data Entry** from Nashville State Community College. Thereafter, she obtained an Associate Degree in **Information Technology**, with a minor in Health Care. She has extensive employment experience in corporate environments, including work as a Business Analyst at *APEX Consulting* and thereafter, for *HealthSpring*, now known as *CIGNA/HealthSpring*, which is a publicly-traded corporation. She admits that she is fluent in reading the English language and that she is able to perform her job as a Business Project Specialist by looking at words on paper and on a computer screen.

### III.   The Loan Involved in This Case

On June 29, 2015, the Plaintiff borrowed money from the Lender, *Advance Financial*. The Plaintiff personally visited an *Advance Financial* branch.   She was afforded the opportunity to review the loan document before she accepted it.   She then entered into a written agreement with the Lender, via a document titled "*Advance Financial Flex Loan Plan Disclosure and Account Agreement.*"   The loan document, in pertinent part, provided as follows:

- **Promise To Pay**. You promise to pay to us all cash advances, interest, fees and all other amounts owing to us in accordance with this Agreement.

- **Interest and Customary Fee**. You will also be charged a customary fee at the rate of 0.7% per day of the average daily principal balance of your account each billing cycle.

- **Default and Cure**. You may be considered in default under this Agreement: (a) <u>if we fail to receive a Minimum Payment Due on or before its scheduled Payment Due Date</u>; (b) if you fail to timely comply with or perform any other obligation under this Agreement; (c) if any representation or warranty made by you to us is false or misleading; or (d) if you begin, or if any other person puts you in, a bankruptcy. . .

- **Our Rights in the Event of a Default**. If you are in default under this Agreement, we may, at our option and as permitted by law, do any one or more of the following: (i) declare your entire account balance immediately due and payable and proceed to collect it; (ii) close your account or lower your credit limit; (iii) exercise all other rights, powers and remedies given by law; and (iv) <u>recover from you all charges</u>, costs and expenses, <u>including all collection costs</u>, court costs and ***<u>reasonable attorneys' fees</u>*** as allowed by law.   (Emphasis added.)

The Plaintiff later failed to comply with the payment terms.   Plaintiff admits that she defaulted.   She also admits that the amount owed on the account, at the time of default, was $4,067.83.[3]

The Cheadle Law Firm (*i.e.*, the Defendant) represents the Lender that loaned money to Plaintiff.   The Lender then hired Defendant to collect the balance of $4,067.83 that Plaintiff

---

[3] Citations to her deposition are in Defendant's Statements of Uncontested Facts **[Doc. 21-2; and 46-1]**.

admits owing.   What happened next forms the entire basis of Plaintiff's claims under the Fair Debt

Collection Practices Act ["the Act"].

## IV.   <u>The June 12, 2017 Letter</u>

The Cheadle Law Firm sent a demand letter to Plaintiff on June 12, 2017.   Plaintiff claims

that letter violated the Act.   The letter stated, in its entirety, the following:

*Ms. Sherry Booker*
*583 Thomas Jefferson Circle*
*Madison, TN 37115*

> Re:     *Harpeth Financial Services, LLC dba Advance Financial*
> *Amount of Obligation: $4,067.83*
> *Attorney Fees: $1,355.94*
> *Total: $5,423.77*
> *Client File Number: 10-5068262*
> *Our File Number: 17004396*

*Dear Ms. Booker:*

*The above obligation has been directed to my office for handling.*

*Please make your payment to the above address.*

*This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by me. If you notify me in writing within the thirty-day period that the debt, or any portion thereof, is disputed, I will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by me.   Upon your written request within the thirty-day period, I will provide you with the name and address of the original creditor, if different from the current creditor.*

*Thanking you for your cooperation in this matter, I am*

> *Sincerely yours, John R Cheadle, Jr.*

## V.    The Underlying Lawsuit

The Cheadle Law Firm then filed suit against the Plaintiff in the General Sessions Court for Davidson County, Tennessee, in Case No. 17GC14504.  That lawsuit was filed on a sworn account and sought to recover the undisputed loan amount of $4,067.83 plus attorneys' fees of $1,355.94, for a total claim of $5,423.77.[4]

The Plaintiff was personally served by a Davidson County Sheriff's Deputy on July 11, 2017.  The case was then set on the Court's Docket for August 2, 2017.   However, the Plaintiff did not oppose the claim.   Instead, the Plaintiff appeared in Court on August 2nd and:

- Agreed to entry of an Agreed Judgment; and,
- Agreed that the amount owed was the same amount that she was sued for (*i.e.*, $4,067.83 plus $1,355.94, for a total of $5,423.67).

**[Cheadle Aff., Doc. 17; and 27-1]**

## VI.    The Plaintiff's Claim that the Cheadle Firm Violated the Act

The Plaintiff then filed <u>this</u> lawsuit, and asserted a very limited claim against Defendant. Specifically, the Plaintiff attacked the Defendant's letter of June 12, 2017.   Plaintiff contends that letter said or inferred that Defendant had obtained "ownership" of the obligation [**Plaintiff's Complaint, ¶6**].   Plaintiff also contends that the letter led her to believe that due to a "pending" lawsuit, that she was under an obligation to pay legal fees [**Plaintiff's Complaint, ¶7**].

As this Court can easily conclude, the letter sent on June 12, 2017 <u>does not</u> actually contain the words: "own," "owns," "owned," "ownership," or the like.   Additionally, the letter <u>does not</u> make any mention of a "lawsuit" or of a "pending lawsuit."

In her deposition, Plaintiff later admitted that the letter did not contain the words that she previously contended were misrepresentations.   Relevant excerpts of her testimony are as follows:

---

[4] The lawsuit sought $4,067.83, which was the <u>exact</u> amount referenced in the earlier letter and the <u>exact</u> amount Plaintiff admits she owed on the loan.

> Q: And you claim that *this letter* included misrepresentations that violated the Fair Debt Collection Practices Act?
>
> A: Uh-huh.

**[Plaintiff's Depo., p. 26/8-11, Doc. 39]**.

> Q: Let's go then back to [your lawsuit] and go to page 3 again, the top of the page, which is the balance of paragraph 6. You then state, "specifically, and without limitation, Defendant's letter on June 12, 2017, Cheadle Law has obtained ownership of an amount of obligation: $4,067.83 and is charging plaintiff attorneys' fees: $1,355.94." Did I read that correctly?
>
> A: That's correct.
>
> Q: Show me in [the letter] where my client represented that it had "obtained ownership."
>
> A: *It's not written in the letter*.
>
> Q: Is the word "own" or "owns" anywhere in the letter?
>
> A: *No*.
>
> Q: My question is, what is your basis for disputing the mathematical accuracy of the last entry . . . that says you owe $4,067.83?
>
> A: *No*, I'm not disputing that.

**[Plaintiff's Depo., p. 43/7 – 44/23, Doc. 39]**. (Emphasis added.)

## VII.    The Plaintiff's Claim for Damages

Plaintiff initially claimed that Defendant's letter caused her damages for "personal humiliation," and "embarrassment," and "mental anguish" and "emotional distress." She has since confirmed that any such conditions subsided after she appeared at the Court hearing on August 2, 2017. She likewise admits that she has not incurred any expenses for these alleged damages. This is because she never actually consulted with a doctor or therapist about these conditions. Her testimony on these issues was as follows:

> Q: Is it correct that you claim you suffered personal humiliation?
>
> A: Yes.

Q:     And is it correct that you claim you suffered embarrassment?

Q:     I'm asking you this, in paragraph 9 did you claim that you suffered embarrassment?   Yes or no?

A:     Yes.

Q:     In paragraph 9 did you claim you suffered mental anguish?   Yes or no?

A:     Yes.

Q:     In Paragraph 9 did you claim you suffered emotional distress?   Yes or no?

A:     Yes.

Q:     Collectively, is it correct that in paragraph 9 you claimed to have suffered personal humiliation, embarrassment, mental anguish, and emotional distress?   Yes or no?

A:     Yes.

Q:     Let's go back to Exhibit 1, which are your interrogatory answers.   Look at page 5, and specifically your answers to No. 12.   Do you see that, Ms. Booker?

A:     Yes, I'm looking.

Q:     We asked you to identify any amounts you had paid for medical expenses for treatments at a hospital or clinic, and you said none; right?

A:     That's correct.

Q:     And to identify any medical expenses for any treatment from a doctor of medicine, including a psychiatrist, and you said none; right?

A:     That's correct.

Q:     And to identify any expenses associated with psychological treatment from a psychiatrist, therapist, or counselor, and you said none; correct?

A:     That's correct.

**[Plaintiff's Depo; p. 48/20 – 50/21, Doc. 39]**.


Q:     The answer is you have not sought such treatment; isn't that correct?

A:     No, I didn't.

Q:     And, therefore, you've not sustained any expense for such treatment; isn't that correct?

A:     That's correct.

**[Plaintiff's Depo; p. 51/3-8, Doc. 39]**.

## VIII.   The Plaintiff's Attempt to Redefine Her Claim

In her recent testimony, Plaintiff conceded that none of these alleged damages actually occurred as a result of the letter upon which her <u>entire</u> lawsuit is based.   Instead, the Plaintiff changed her story.   She next claimed that her mental damages were actually sustained as a result of a phone call that she had with Defendant's office <u>after</u> she received the letter.   According to her, she called to offer a monthly payment plan of $200.   The Defendant's staff member advised that the payment needed to be for a higher amount and also, that there would need to be an arrangement confirmed by a Court Order (*i.e.,* an Agreed Judgment).

Again -- there is <u>no</u> such allegation in Plaintiff's Complaint concerning a telephone conversation.   More importantly, any claim regarding this phone conversation could not survive scrutiny.   This is because of the Plaintiff's later admissions regarding that phone conversation. Those were as follows:

> *Q:   Just to prune this out in a little bit more detail.   So it's not that you were embarrassed or humiliated during the course of that [telephone] conversation.   It was that you were embarrassed and humiliated over the concept of having to go down to the courthouse later; right?*
>
> *A:   Exactly.*

**[Plaintiff's Depo; p. 68/20 – 69/5, Doc. 39]**.

> *Q:   Are you continuing to suffer any of those [conditions]?*
>
> *A:   No, I wouldn't say so, not at this moment.*

**[Plaintiff's Depo; p. 74/19-22, Doc. 39]**.

> *Q:   Was there anything inappropriate about what [the Defendant's employee] said or how she said it?*
>
> *A:   <u>No</u>.*

**[Plaintiff's Depo; p. 78/11-14, Doc. 39]**.   (Emphasis added.)

| | |
|---|---|
| *Q:* | *Did she say anything [inappropriate] or anything like that?* |
| *A:* | <u>*No*</u>. |
| *Q:* | *So she was stern but appropriate; right?* |
| *A:* | <u>*Yes*</u>. |

**[Plaintiff's Depo; p. 78/21 – p. 79/1, Doc. 39]**.   (Emphasis added.)

Moreover, the alleged trauma of the phone call did not cause Plaintiff to seek medical attention or other stress-related therapy.

Simply stated, the phone conversation is not material to this case.

## ARGUMENT

### I.
### The Plaintiff Has Failed to Comply with The Provisions Of Rule 56, F.R.C.P. And Local Rule 56.01

**A.**      In connection with Defendant's initial Motion for Summary Judgment, it filed its Statement of Uncontested Facts **[Doc. 18]**.   That document included 10 Statements of Fact, all of which Defendant contended were uncontested.   To her credit, the Plaintiff responded honestly, and admitted 9 of those 10 Statements **[Doc. 21.2]**.[5]

In connection with Defendant's *renewed* Motion for Summary Judgment, Defendant again relied upon those statements, as well as additional admissions made by Plaintiff during her deposition **[Doc. 38]**.   Surprisingly, in her later response to many of the <u>same</u> Statements of Fact, Plaintiff attempted to avoid Summary Judgment by dodging her prior admissions.   This time around, Plaintiff neither admitted nor denied a great number of the Statements.   Instead, she lodged an "Objection," contending that the alleged facts are not relevant.   However, the issue of relevance is for this Court to decide.   Moreover, the reason that the Rule requires Statements of

---

[5] Plaintiff admitted Statement Nos. 1, 2, 3, 4, 5, 6, 8, 9, and 10 **[Doc. 21-2]**.

Facts is so that a court can easily determine what facts are disputed. Yet, Plaintiff lodged objections to Statement Nos. 1, 2, 3, 6, 7, 8, 9, and 10 (many of which were patterned after Plaintiff's initial responses, which she admitted).

       **B.**     Rule 56, F.R.C.P., expressly provides that in opposition to factual assertions, a non-movant must address the facts, head on. Otherwise, the court may "*consider the fact undisputed for purposes of the motion.*" Local Rule 56.01 provides a harsher burden. It provides that a party opposing a Motion for Summary Judgment "*must respond*" to each fact set forth by the moving party. The non-movant must either:

-        Agree that the fact is undisputed, generally, or for the limited purpose of summary judgment; or,
-        Demonstrate that the fact is disputed (by citation to evidence).

And, if a fact is disputed, then it must be supported "*by specific citation to the record.*" *See,* Local Rule 56.01.

       Sub-part (g) of that Rule also provides that the failure to respond to a moving party's Statement of Material Facts "*shall indicate that the asserted facts are not disputed for purposes of summary judgment.*" Accordingly, all of the facts set forth in Defendant's renewed Statement of Uncontested Facts **[Doc. 46-1]** should be deemed undisputed.[6]

---

[6] This is because the Plaintiff admitted Nos. 4, 5, 13, 14, 21, 23, and 24; Plaintiff attempted to dispute Nos. 11 and 12, but did not actually cite the Court to any actual evidence, as required by the applicable Rules. The Plaintiff simply objected to the remaining Statements which, as noted, are deemed admitted.

**II.**
**The Defendant's Letter Did Not Violate the Act**

The Act is clear in that Section 1692e creates liability to a debt collector, but only if it uses "*false or misleading representations*" in connection with its collection efforts (*i.e.,* collection letters, phone calls and the like). The statute sets forth sixteen (16) examples of what is a "*false or misleading*" statement, including, for example, a representation by the debt collector that it is affiliated with the United States or any state; a false representation regarding the character of the debt; a false representation that the debt collector is an attorney when in fact it is not an attorney. *See,* 15 USCS §1692e.

The Plaintiff's entire claim rests upon the content of the letter sent by Defendant on June 12, 2017. In her Complaint, the Plaintiff contends (in paragraph 6) that the Defendant violated the Act because its letter falsely reflected that the Defendant had "*obtained ownership*" of the obligation. Plaintiff then contends that the letter violated the Act because it falsely led Plaintiff to believe that there was a "*pending lawsuit*…"

However, this Court can see for itself that Defendant's letter made no mention of obtaining ownership of the debt or of a pending lawsuit. In fact, Defendant's letter does not use any of the following words:

- Own,
- Owns,
- Owned,
- Ownership,
- Lawsuit, or
- Pending Lawsuit

Moreover, nothing about the Defendant's letter was false or misleading. The Plaintiff has now admitted as much. This is also evident by the fact that the Plaintiff ultimately appeared in the General Sessions Court for Davidson County and:

- Conceded that she owed money to the Lender identified in the earlier letter,
- Conceded the amount of the debt, as set out in the earlier letter, and
- Conceded an obligation to pay legal fees, as set out in the earlier letter.

Therefore, to now suggest that the Defendant's earlier letter, which addressed those exact same points, was "false or misleading" is a fabrication. Simply stated, there are no *genuine* issues of material fact regarding the letter. Again, in Plaintiff's recent deposition, she admitted that the amount referenced in Defendant's letter mathematically matched the Lender's debt verification. She also admitted to reviewing the loan document prior to signing it, which contained a provision obligating Plaintiff to pay the Lender's cost of collection, including attorneys' fees. And, the Affidavit of the Defendant confirms that the claim for attorneys' fees was made for one-third of the amount of the claim, <u>consistent with the protocol of the General Sessions Court for Davidson County</u> **[Cheadle Aff., ⁋ 4-5, Doc. 27-1]**.

Also, the Judgment ultimately entered against the Plaintiff in the General Sessions Court for Davidson County was completely consistent with the earlier letter sent by the Defendant; namely, the amount owed on the loan matched, and the amount sought for attorneys' fees matched. **[Cheadle Aff., ⁋ 4-5, Doc. 27-1].**

There simply is nothing about Defendant's letter that was "false or misleading." Accordingly, the Defendant's letter of June 12, 2017 did not violate the Act and as a result, Defendant is entitled to Summary Judgment as a matter of law.

## III.
## The Claim for Legal Fees

In the Defendant's June 12, 2017 letter, it included an additional claim for the recovery of attorneys' fees totaling $1,355.94.   The later lawsuit filed against the Plaintiff by the Defendant law firm also included a claim to recover legal fees for that same amount; *i.e.,* the $1,355.94.   In the Judgment entered against the Plaintiff by the General Sessions Court for Davidson County, it included an award of attorneys' fees for that same amount; *i.e.,* $1,355.94 **[Cheadle Aff., Doc. 17; and 27-1]**.

While Plaintiff's Federal lawsuit is not clear, she appears to make some argument over the fact that Defendant's letter of June 12, 2017 included a claim for legal fees.   However, the Loan Agreement that Plaintiff signed expressly states that in the event of default, that the Lender could "*recover from you all charges, costs and expenses, including all cost of collection, court costs and **reasonable attorneys' fees** as provided by law.*" (Emphasis added).   With regard to those fees, the unrebutted Affidavit of Defendant confirms the following:

> *With regard to the claim for attorneys' fees, those were pursued pursuant to the written agreement between Plaintiff and the Lender.   The amount sought for fees to be recovered by Plaintiff's Lender was $1,355.94.   This is the exact amount included in my letter of June 12, 2017.   That was also the exact amount included in the lawsuit filed against Plaintiff by the Lender in the General Sessions Court for Davidson County.   This is also the exact amount awarded by the judge in the General Sessions Court for Davidson County, and incorporated into its Judgment against Plaintiff.*
>
> *<u>It is the practice of the General Sessions Court for Davidson County to award attorneys' fees of one-third of the principal and interest owed</u>.   The judge in the General Sessions Court case against the Plaintiff followed that practice and awarded fees consistent with that practice.*   (Emphasis added).

**[Cheadle Aff., Doc. 17; and 27-1]**

Thus, the reference to legal fees made by Defendant in its letter was not a violation of the Act. This is because: (1) Plaintiff had already contractually agreed to pay fees, (2) the amount sought was consistent with the practice and custom of the Court in which Defendant filed suit, and (3) the General Sessions Court Judge later awarded legal fees in the exact amount.

## IV.
### Absent Granting Full Summary Judgment, This Court Should Grant Partial Summary Judgment Dismissing Plaintiff's Claim for Damages for Mental Anguish and Emotional Distress, and also, Humiliation and Embarrassment

The Act provides a debtor with the right to recover statutory damages and actual damages. Plaintiff seeks those statutory damages. Plaintiff **also** seeks to recover actual damages under the Act. Regarding her claim for actual damages, Plaintiff asserts, in paragraph 9, the following:

> *Plaintiff suffered and continues to suffer injuries such as personal humiliation, embarrassment, mental anguish and emotional distress.*

Again, there is no evidence that the Plaintiff "*continues to suffer . . .*" In fact, in her deposition, the Plaintiff admitted that to the extent she was emotionally upset as a result of these events, that it subsided once she appeared in court on August 2, 2017 [**Plaintiff's Depo., p. 74/24 – p. 75/10; and p. 77/13-20**].

There is then the issue as to whether the Plaintiff **previously** suffered damages for personal humiliation, embarrassment, mental anguish and emotional distress, in order to create a compensable claim under the Act. While the Act provides for awards of "actual damages," a litigant must have actual proof of those "actual damages." *See, Costa v. National Action Fin. Svcs.,* 634 F. Supp. 2d 1069 (E.D. California 2007) holding that in order to recover beyond statutory damages, a plaintiff must show "definable" actual damages. *Id.,* p. 1078. In *Costa,* the Court held that the debtor's claim for emotional distress must be rejected because it was supported by only her uncorroborated statement of that claim. The same is true, herein.

Additionally, a mental injury is only compensable if it is established by expert proof (medical or scientific). *See, Miller v. Willbanks,* 8 S.W. 3d 607 at 614 (Tenn. 1999). *See, also, Camper v. Minor,* 915 S.W. 2d 437 at 446 (Tenn. 1996).

Herein, Plaintiff admits that she has no medical or scientific support. And, her deadline to designate an expert has expired. Plaintiff's claim for actual damages, therefore, is uncorroborated. As a result, it is not compensable. *See, Costa,* 634 F. Supp. 2d at 1078.

## V.
## The Act Does Not Apply to Creditors Collecting Their Own Debts

The Plaintiff contends that the Defendant violated the Act by implying that it was the actual owner of the obligation. If it were determined (academically or otherwise) that Defendant was the owner of the obligation, then this action is completely barred by the provisions of *Henson et al. v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718; 85 U.S.L.W., 3344; and 196 L. Ed. 2d 895 (June 12, 2017). In that case, the Supreme Court held that the protective provisions of the Act do not apply to creditors collecting their own debts; it applies only to collection agencies attempting to collect debts owed to other parties. Accordingly, if the Plaintiff's allegations were construed as accurate (*i.e.,* that Defendant obtained ownership of the debt), then Defendant is exempt from the provisions of the Act, and Plaintiff's claim fails as a matter of law.

**CONCLUSION**

For the reasons set forth herein, Defendant requests entry of an Order granting it full Summary Judgment thereby dismissing all of the Plaintiff's claims; alternatively, Defendant requests that the Plaintiff's claim for actual damages for "mental anguish and emotional distress" and for "humiliation and embarrassment" be dismissed, as unsubstantiated.

Respectfully submitted,

/s/ Phillip Byron Jones
**Phillip Byron Jones** (#14125)
Evans, Jones & Reynolds, P.C.
SunTrust Plaza, Suite 710
401 Commerce Street
Nashville, TN 37219
(615) 259-4685 Telephone
Pjones@ejrlaw.com
*Attorneys for Defendant, Cheadle Law*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the foregoing has been served on this the 14th day of December, 2018, as follows:

| <u>Addressee</u> | <u>Method(s) of Service</u> |
|---|---|
| **Susan S. Lafferty, Esq.**<br>Lafferty Law Firm, P.C.<br>555 Marriott Drive, Suite 315<br>Nashville, TN 37214<br>susanl@laffertylawonline.com<br><br>*Attorney for Plaintiff* | X    Electronically via the Court's ECF System<br><br>☐    U.S. Postal Service (First-Class, Postage Prepaid)<br><br>☐    Email |
| **Todd M. Friedman, Esq.**<br>Law Offices of Todd M. Friedman<br>21550 Oxnard Street, Suite 780<br>Woodland Hills, CA 91367<br>tfriedman@toddlfaw.com<br><br>*Attorney for Plaintiff* | X    Electronically via the Court's ECF System<br><br>☐    U.S. Postal Service (First-Class, Postage Prepaid)<br><br>☐    Email |

822529.031

/s/ Phillip Byron Jones
**Phillip Byron Jones, Esq.**